## MARYLAND CASUALTY CO. v. CASSETTY et al.

### No. 8513.

Circuit Court of Appeals, Sixth Circuit.

May 16, 1941.

George H. Armistead, Jr., of Nashville, Tenn. (McConnico, Armistead, Waller & Davis, of Nashville, Tenn., on the brief), for appellant.

B. B. Gullett, of Nashville, Tenn. (R. C. Boyce and B. B. Gullett, both of Nashville, Tenn., on the brief), for appellees.

Before HICKS, HAMILTON and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This appeal is from a declaratory judgment in an action brought by appellant, Maryland Casualty Company, a Maryland corporation, doing business in the State of Tennessee against the appellees, Fred B. Cassetty and Fred J. Cassetty, doing business under the name of Fred B. Cassetty Coal Company and Mrs. C. W. Welsh, citizens of the State of Tennessee, to determine whether appellant's motor vehicle liability policy furnishes coverage for personal injuries suffered by the appellee, Mrs. C. W. Welsh.

On or about July 5, 1938, appellant issued to appellees, Fred B. Cassetty and Fred J. Cassetty, its automobile liability policy, number 15-663519, under the terms of which appellant insured against and agreed to pay on behalf of the assured, all sums which the assured should become obligated to pay by reason of the liability imposed upon them by law for damages including damages for care and loss of services, because of bodily injury, including death, at any time, resulting therefrom, sustained by anyone caused by accident and arising out of the ownership, maintenance or use of the assured's automobile.

The insurer contracted, in addition to paying damages, to defend on behalf of the assured any suit against them or either of them by reason of the use, operation and maintenance of the truck even though such suit was groundless, false or fraudulent.

According to the terms of the policy, the automobile covered was to be used exclusively for "commercial purposes" which was defined in the instrument as the transportation or delivery of goods, merchandise, or other materials and uses incidental thereto in direct connection with the named assured's business or occupation" which it was stated in the policy was that of coal dealers; also, that "use of the automobile for the purpose stated includes the loading and unloading thereof."

On or about December 19, 1938, appellees, Cassettys, delivered a truckload of coal to a building occupied by Fenner & Beane on the north side of Union Street in Nashville, Tennessee, between Third and Fourth Avenues, north, in a truck covered by appellant's policy. As a part of the contract of sale, appellees were to deliver the coal into the basement or cellar of the building. Three of appellees' employees, one driving, dumped the load of coal out of the truck in front of Fenner & Beane's place of business onto the sidewalk in which was a manhole or opening, then started to shovel it into the basement of the building, leaving the truck parked on the street. A traffic policeman required the driver of the truck to move it about a block away, where he parked the truck and returned and joined his co-workers in shoveling the coal into the basement.

Appellee, Mrs. C. W. Welsh, claims she stumbled over a piece of coal in the pile dumped from the truck and as a result fell to the street and was severely injured. She demanded of her co-appellees, damages for her injuries. They gave notice to appellant of the claim and called on it to defend. Subsequently, Mrs. Welsh instituted an action against her co-appellees in the Circuit Court of Davidson County, Tennessee, seeking to recover from them $10,000 damages for her alleged injuries. Appellees gave notice to appellant of the institution of this action and called on it to defend. The lower court decreed that appellant was contractually obligated to defend the action for and on behalf of appellees, hence this appeal.

Appellant seeks relief under Title 28 U. S.C.A. § 400, Judicial Code § 274d, that it may know whether it has the duty to defend. Jurisdiction is conceded and the single issue presented is, were the injuries of Mrs. Welsh proximately due to the use or unloading of the truck?

A contract of liability insurance is purely a business adventure. Its characteristic feature is the grant of an indemnity or security against loss for a stipulated consideration. As in all mercantile contracts, it is unwise to apply highly technical rules of construction to such a policy. The whole document should be construed in the light of the subject matter with which the parties are dealing and the words or

phrases of the policy should be given their natural and ordinary meaning as understood in the business world.

In determining the true meaning of the provisions of the present policy, we are not limited to the phrase "loading and unloading" but it is our duty to construe the policy in its entirety and, taking the instrument by its four corners, to endeavor, if possible, to ascertain the mutual intention of the parties as it existed at the time of the delivery of the policy and in applying this rule we need not disregard the fact that since the advent of the automobile, policies insuring their owners against loss sustained on account of having to pay damages for injuries inflicted by the use of the machine have become very common, and are a species of insurance possessing distinguishable characteristics.

■ The policy here undertakes to indemnify the assured against loss because of bodily injuries arising out of the ownership, maintenance or use of the automobile and this phrase includes the "loading or unloading" thereof and the transportation or delivery of goods. Giving effect to the entire policy, it is clear it was intended by the parties to cover liability arising in some instances when the truck was stationary. If the unloading of the truck or its use in the transportation or delivery of goods was the efficient and predominating cause of appellee's injuries, we need look no further in determining liability under the policy. General Mutual Insurance Company v. Sherwood, 14 How. 351, '55 U.S. 351, 365, 14 L.Ed. 452. This rule prevails in Tennessee. Maness v. Life & Casualty Insurance Company, 161 Tenn. 41, 28 S.W.2d 339.

■ The Cassettys were obligated to deliver the coal into the basement of their customer's building and the truck was used to place the coal on the sidewalk for that purpose and no other intervening force actively operated to produce the harm of which appellee Welsh complains. If the coal had not been unloaded from the truck, presumably she would not have been injured and there is no evidence in the record that the coal over which she stumbled had been disturbed or moved after unloading and before her injury. At the time of her injury, delivery of the coal had not been completed. If the coal had fallen from the truck, due to negligent loading, and struck appellee while she was passing over the street, or one of wheels of the truck had come off and another motorist had collided with either the coal or the truck, there would be no question that the policy would have covered either accident. We see no difference in the legal consequences between the illustrated acts and that of using the truck to dump the coal at the place where the alleged accident occurred.

There are cases involving somewhat similar contracts, though different in form and facts, which appellant insists supports its view by analogy. Among these is the case of Hinton v. Liability Assurance Corporation, 166 Tenn. 324, 62 S.W.2d 47. In that case, the policy protected the assured against loss or damages, " 'as the result of the ownership, maintenance, operation, or use' of the described automobile." The phrase "loading or unloading" was not included in the policy. The machine was an ambulance and its drivers and assistants took from it a stretcher, went into the home of a sick woman and placed her on it and started to carry her to the machine. One of the stretcher-bearers slipped on a muddy terrace in the yard and the stretcher and its occupant fell, injuring the woman. The court held the transportation from bed to curb was preparatory to the use of the ambulance, but until the ambulance had been actually reached, its use in the transportation of the patient had not begun. The court stated "the transportation of sick persons from bed to street curb was a necessary incident to the conduct of complainants' business of operating an ambulance for hire, but was not a necessary incident to the operation or use of the ambulance as a motor vehicle, as the actual placing or removal of persons therein and therefrom would be."

The court ruled that the policy in question was to be construed as insuring against liability arising from the operation and use of the vehicle and not against liability arising from the conduct of their business. It found for the insurance company. In our opinion the present contract and facts make the cited case inapplicable.

If the injury of which Mrs. Welsh complains, had resulted from the negligence of the truck driver or his assistants in moving the coal into the building after it was unloaded, the cited case would have had some general application but would not have been decisive because of the different language of the respective contracts.

■ There has not been called to our attention and, from all available data, we

have found no state rule of law nearer to the case at bar than Hinton v. Liability Assurance Corporation, supra; West v. American Telephone & Telegraph Company, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. —, 132 A.L.R. 956. We therefore exercise our independent judgment in determining the law with respect to the issues here presented, based upon whatever principles of state law are applicable. Burns Mortgage Company v. Fried, 292 U.S. 487, 496, 54 S.Ct. 813, 78 L.Ed. 1380.

Other cases tending to support appellant's views are Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629; Franklin Co-op. Creamery Ass'n v. Employers' Liability Assurance Corp., 200 Minn. 230, 273 N.W. 809; Zurich General Accident, etc. v. American Mutual Co., 118 N.J.L. 317, 192 A. 387; Caron v. American, etc., Co., 277 Mass. 156, 178 N.E. 286, and John Alt Furniture Co. v. Maryland Casualty Co., 8 Cir., 88 F.2d 36.

We find it unnecessary to discuss these cases at length. It suffices to say that each is distinguishable from the case at bar, either in the form of the contract or its facts.

The case nearest in point is that of Maryland Casualty Company v. Tighe, 9 Cir., 115 F.2d 297. That case involved a policy identical with the present one and with the same insurer. The facts were that the employee of the assured stopped the truck covered by the policy on the street opposite the place where he was to make a delivery and took some merchandise from the truck into the premises. He started across the street to the truck for more merchandise and while looking backward over his shoulder, collided with a pedestrian on the street, knocking her down and severely injuring her. The court decided the policy in question covered the resulting injury.

In the case of Wheeler v. London, etc., Company, 292 Pa. 156, 140 A. 855, the insured was protected by a policy containing the phrase "loading or unloading" and a truck covered by the policy was used to transport two large steel girders to a building. Under the contract of transportation, the girders were to be delivered inside the building, but in order to do this they first had to be unloaded on the street. The smaller girder was placed within the building by using the insured's truck and its motor power. The larger girder had to be jacked up and planks and rollers put under it, which was done and the truck moved to the opposite side of the street. While the girder was being rolled into the building, a boy passing on the street was injured by coming into contact with it. The court ruled the policy covered the resulting damage. There are many other cases with facts similar to the case at bar and dealing with contracts of substantially the same import, which sustain the contention of appellees. They are Panhandle Steel Products Co. v. Fidelity etc., Co., Tex.Civ.App., 23 S.W.2d 799, 801; Merchants Co. v. Hartford, etc., Co., 187 Miss. 301, 188 So. 571, 192 So. 566; Owens v. Ocean, etc., Co., 194 Ark. 817, 109 S.W.2d 928; State v. District Court of Second Judicial Dist., 110 Mont. 250, 100 P.2d 932; Quality Dairy Co. v. Ft. Dearborn Underwriters, Mo.App., 16 S.W.2d 613; Roche v. U.S. Fidelity & Guaranty Co., 247 App.Div. 335, 287 N.Y.S. 38.

In our opinion, under the terms of the present contract, appellant was required to defend the claim of Mrs. Welsh against her co-appellees.

Judgment affirmed.